EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JANICE BARBARA TOLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:25-cv-000150-AGF |
| | ) |
| FRANK BISIGNANO,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This action is before the Court for judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff Janice Barbara Toler was not disabled and thus not entitled to disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* For the reasons set forth below, the decision of the Commissioner will be affirmed.

## BACKGROUND

The Court adopts the statement of facts set forth in Plaintiff's Statement of Uncontroverted Material Facts (ECF No. 13-1),[2] which have been admitted by Defendant

---

[1] As Plaintiff notes, Frank Bisignano became the Acting Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted for Michelle King as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Plaintiff was granted leave to file a corrected brief attaching her Statement of Uncontroverted Facts, which was unintentionally omitted from Plaintiff's original filing. *See* ECF No. 10 (motion for leave to file corrected brief), ECF No. 12 (order granting ECF No. 10). While Plaintiff's corrected filing contained her Statement of Uncontroverted Facts (ECF No. 13-1), the Court notes that only the first four pages of her

1

(ECF No. 14). The Court has reviewed the transcript, and the statement of facts provides a fair description of the record before the Court. Specific facts are discussed below as needed to address the parties' arguments.

Plaintiff, who was born on May 29, 1958,[3] applied for DIB on September 7, 2022. Tr. 268. She alleged disability beginning on April 15, 2020, due to severe medical impairments including bilateral lymphedema, bilateral venous insufficiency, and bilateral lower extremity swelling.[4] Tr. 149. Plaintiff's relevant past work included a "merchandise deliverer" and, more recently, a sedentary "consultant" performing data analysis. Tr. 168, 170. Plaintiff's application for DIB was denied on initial application and on reconsideration, and she thereafter requested a hearing before an Administrative Law Judge ("ALJ").

The ALJ conducted a hearing by telephone on December 5, 2023. Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified at the hearing. By decision dated January 29, 2024, the ALJ found that Plaintiff suffered from severe medical impairments of obesity, trochanteric bursitis in her right hip, varicose veins in

---

brief were included in this filing (ECF No. 13). As such, the Court refers to arguments contained in the opening brief submitted in full as ECF No. 10-1 (Plaintiff's proposed initial brief with corrected Statement of Uncontroverted Facts incorporated).

[3]  A presumed error appears in the hearing transcript indicating that Plaintiff's date of birth is May 29, 1968. Tr. 150. However, the remaining references to her date of birth contained throughout the record reflect that she was born in 1958.

[4]  The ALJ found that Plaintiff suffered from several additional severe medical impairments. However, Plaintiff's legal arguments relate only to the ALJ's consideration of the swelling and lymphedema in her lower extremities and the associated need to periodically elevate her legs. Thus, this Memorandum and Order does not discuss Plaintiff's other impairments or the ALJ's findings with respect thereto.

bilateral lower extremities with edema, lumbar degenerative disc and joint disease, and asthma. Tr. 26. However, the ALJ concluded that none of Plaintiff's impairments, together or individually, met or equaled one of the deemed-disabling impairments listed in the Commissioner's regulations. Tr. 27.

Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work, as defined in the Commissioner's regulations, with limitations only related to avoidance of concentrated "exposure to humidity, wetness, dust, odors, fumes and pulmonary irritants" (primarily related to Plaintiff's asthma). Tr. 28. Relevant to this appeal, the ALJ did not find Plaintiff to have a functional limitation requiring her to elevate her legs periodically, which Plaintiff disputes. Based on the RFC, the ALJ concluded that Plaintiff was capable of performing her past work as a consultant. Tr. 31.

### A. Evidence Presented by Plaintiff

At the hearing, Plaintiff reported experiencing "poor circulation" in her lower legs which required vein ablation. Tr. 153. She stated that the vein ablation she received caused lymphedema that led to swelling in her feet and legs, impairing her ability to walk or bend her ankles. *Id*. Plaintiff stated that to relieve the swelling, she must elevate her legs "frequently" throughout the day by reclining such that her feet are above the level of her hips. Tr. 153-54. The ALJ inquired as to how often Plaintiff elevates her legs, and she testified that while she is "supposed to" elevate them for fifteen minutes each hour, this frequency is not feasible, so she elevates her legs for fifteen or twenty minutes every "couple of hours" instead. Tr. 153. In addition to elevating her legs, Plaintiff reported wearing "compression hose and a special wrap" to manage the swelling in her lower

3

extremities.  Tr. 162.  Plaintiff testified that she believed she would be able to sit in a typical office chair for thirty minutes before she would need to elevate her feet.  Tr. 159.

Plaintiff also testified to her general activities of daily living.  She testified that she lived alone and could cook, drive, do laundry, clean in short increments, visit her sister who lives a mile away, check her mail, and attend church weekly.  Tr. 159-61.  However, she testified that when she attended weekly church services, she could "feel [her] feet swelling" while sitting in the pew, and when she drives, her feet swell if it is a "long" drive.  Tr. 160, 166.

Plaintiff's medical records reflect treatment for swelling in her lower legs, and a significant portion of this treatment occurred during the summer of 2021.  In October 2020, Plaintiff reported that swelling in her lower extremities interfered with her ability to drive and caused her to need to elevate her legs for six to seven hours every day.  Tr. 683.  She underwent a reflux study revealing abnormalities in venous flow in multiple areas, necessitating venous radiofrequency ablations in November 2020, which were successful.  Tr. 677-86.  However, in April 2021, during a follow up examination related to her leg swelling, Plaintiff reported that after initial improvement, her symptoms had worsened again, and she was prescribed a diuretic medication.  Tr. 636-37.  In May 2021, a physical therapist noted that Plaintiff reported functional limitations in numerous areas of daily activity, and the following month, another of Plaintiff's medical providers confirmed a diagnosis of lymphedema in both lower extremities.  Tr. 627, 633.  In physical therapy sessions throughout the summer of 2021, Plaintiff's medical providers noted fluid retention and edema in her lower legs, sometimes increasing and sometimes

4

decreasing, despite diuretic medication, good compliance with compression garments, wrap therapy and massage, and later, use of a tactile lymphedema pump. Tr. 596-633. In September 2021, Plaintiff presented for a follow up at a heart and vascular clinic regarding her lower extremity edema. Tr. 582-85. She reported worsening swelling in her lower legs despite treatment through a lymphedema clinic, and subjective notes indicated that she said she was told that "there is not much else they can do for her" and that she should follow up with a physician who was described as "an expert in lymphedema." Tr. 582-83. During an emergency room visit in October 2021 (unrelated to her lymphedema), treatment notes indicated observation of lymphedema in her lower legs, and she was given medications that were noted as potentially helpful with this edema. Tr. 578.

Notably, in August 2021, Plaintiff presented for a follow up visit during which it was noted that Plaintiff began lymphedema therapy. Tr. 604. The provider noted that the wraps and massage were "helping tremendously." *Id*. The ALJ cited this finding in his decision. *See* Tr. 29. At this visit, Plaintiff's feet appeared normal, and fluid had begun moving into her upper legs. Tr. 604. After 2021, notes reflecting lymphedema are less frequent, and the ALJ noted that not much treatment was recorded after 2021. Tr. 29. Though not highlighted in Plaintiff's briefing or statement of facts, her medical records demonstrate improvement in the edema in her lower extremities during the summer of 2022, consistent with the ALJ's finding that her lower extremity edema improved after 2021. *See* Tr. 492, 501, 513 (visits in June, July, and August of 2022 noting physical exams showing "no edema" in Plaintiff's lower extremities). The most recent cited

example of ongoing edema was during a June 2023 follow up at a sleep clinic, during which Plaintiff's provider noted bilateral lower extremity edema, though no treatment was prescribed.  Tr. 3291.

### A. The VE's Hearing Testimony

During the hearing, the ALJ questioned the VE about Plaintiff's reported limitations.  The VE responded to hypotheticals posed by the ALJ, incorporating both "sedentary" and modified "light work" with functional limitations related only to avoiding concentrated exposure to humidity, wetness, dusts, odors, fumes, and pulmonary irritants.  In response, the VE testified that the hypothetical person could perform Plaintiff's past relevant work as a "consultant" at both the sedentary and light exertional levels.  Tr. 168-69.  However, the VE testified that a hypothetical individual who needed to elevate their feet above torso level for fifteen to twenty minutes every two hours could not sustain any work in the national economy because this frequency would exceed normal break periods, and work facilities generally cannot accommodate that kind of elevation.  Tr. 171.  The VE also confirmed that a hypothetical individual who needed to elevate their legs to the level of their heart for at least 20 minutes every hour could not sustain any work in the national economy.  Tr. 172.

In addition to the VE's testimony, the ALJ found persuasive prior administrative medical findings that indicated that Plaintiff could perform a range of light work, consistent with the noted improvements in pain and swelling following treatment reflected in Plaintiff's medical records.  Tr. 30.  The only limitations noted in these prior administrative medical findings pertained to exposure to environmental irritants relevant

6

to Plaintiff's cough/asthma.  Tr. 180, 189.

Relying on the VE's testimony regarding a hypothetical person with Plaintiff's RFC and vocational factors (age, education, and work experience), the ALJ found that Plaintiff remained able to perform her past relevant work as a consultant.  Tr. 31-32. Accordingly, the ALJ concluded that Plaintiff was not disabled under the Social Security Act.  Tr. 32.

In his decision, the ALJ gave an overview of the diagnoses and treatment Plaintiff received related to the swelling in her lower extremities.  Specifically, the ALJ stated as follows:

> The claimant has been treated for swelling of her legs beginning in July 2020 and she was noted to have varicose veins consistent with venous insufficiency in October 2020. (Exhibits 3F/205-208, 211-12, 221-25, 18F/47-50) In November 2020, she underwent vein ablations of the left leg. (Exhibits 18F/51, 110, 22F/60-127) The claimant reported that her edema had improved initially with this procedure, but became worse in April 2021. (Exhibit 23F/11-45) However, **she was given wrap therapy during the summer of 2021, which helped "tremendously."** (Exhibits 3F/116-22, 130-32, 153-160, 165-73, 23F/38) The record does not show much treatment for lymphedema or varicose veins since 2021. Based on the evidence, the undersigned finds **the claimant's varicose veins and lymphedema with associated swelling of the legs has been adequately treated, has not been continuous and does not require elevation of the legs every hour**.

Tr. 29 (emphasis added).  Plaintiff takes issue primarily with the text in bold, arguing that the ALJ's decision regarding her leg elevation requirement failed to give proper weight to the testimony she offered establishing her ongoing need to elevate her feet periodically throughout the day.

7

Plaintiff filed a timely request for review by the Appeals Council of the Social Security Administration. The Appeal Council denied Plaintiff's request to review the ALJ's decision on December 9, 2024. Tr. 7. Plaintiff has thus exhausted all administrative remedies, and the ALJ's decision stands as the final agency action now under review.

Plaintiff argues that the ALJ erred by: (1) giving too little weight to Plaintiff's testimony regarding her need to elevate her legs every two hours in assessing her RFC; (2) rendering an opinion inconsistent with medical evidence regarding improvement and treatment of her lower extremity swelling; and (3) failing to adequately consider the limitations to her daily activities caused by the swelling in her lower legs. For the reasons below, the Court finds that Plaintiff's arguments are not persuasive, and the ALJ's decision will stand.

## DISCUSSION

**Standard of Review and Statutory Framework**

In reviewing the denial of Social Security disability benefits, a court must review the entire administrative record to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole. *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011). "[T]he threshold for such evidentiary sufficiency is not high. Substantial evidence . . . is more than a mere scintilla." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quotations omitted). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*.

A reviewing court "must consider evidence that both supports and detracts from the ALJ's decision. If, after review, [the court finds] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the decision of the Commissioner." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016) (citations omitted). Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted). A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance. *Id.*

To be entitled to benefits, a claimant must demonstrate an inability to engage in substantial gainful activity which exists in the national economy, by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner has promulgated regulations, found at 20 C.F.R. § 404.1520, establishing a multi-step sequential evaluation process to determine disability. The Commissioner begins by determining whether the claimant is engaged in substantial gainful activity. If not, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments. 20 C.F.R. § 404.1520(c). A severe impairment is one which significantly limits a person's physical or mental ability to do basic work activities. *Id*.

If the impairment or combination of impairments is severe and meets the duration requirement, the Commissioner determines at step three whether the claimant's impairment meets or is medically equal to one of the deemed-disabling impairments

9

listed in the Commissioner's regulations. If not, the Commissioner asks at step four whether the claimant has the RFC to perform his past relevant work. If the claimant cannot perform his past relevant work, the burden of proof shifts at step five to the Commissioner to demonstrate that the claimant retains the RFC to perform work that is available in the national economy and that is consistent with the claimant's vocational factors – age, education, and work experience. *See, e.g.*, *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010). But even though the burden of production shifts to the Commissioner at step five, the burden of persuasion to prove disability remains on the claimant. *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

**Evaluation of Plaintiff's Credibility**

To determine the Plaintiff's RFC, the ALJ must consider all relevant evidence, which includes the claimant's own descriptions of her limitations. *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). "Before determining a claimant's RFC, the ALJ first must evaluate the claimant's credibility." *Id*. In evaluating the claimant's own reported limitations, the ALJ must consider objective medical evidence as well as factors such as a claimant's daily activities, the effectiveness of treatment, precipitating and aggravating factors, and functional restrictions. *Id*. "An ALJ who rejects [subjective] complaints must make an express credibility determination explaining the reason for discrediting the complaints." *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009) (quoting *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000) (alteration in original). However, the ALJ need not explicitly discuss every factor bearing on Plaintiff's credibility. *Id*. (citing *Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir. 2005)). An ALJ also

10

need not discuss every piece of evidence submitted.  *Hensley*, 829 F.3d at 932 (citing *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)).  It is sufficient for the ALJ to acknowledge and consider the factors before discounting a claimant's subjective complaints.  *Moore*, 572 F.3d at 524.  "Credibility determinations are the province of the ALJ," and the Court "defers to the ALJ's determinations as long as good reasons and substantial evidence support the ALJ's evaluation of credibility."  *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1090 (8th Cir. 2018) (citations omitted).

Plaintiff contends that the ALJ failed to consider her own descriptions of her functional limitations because the ALJ's decision only explicitly rejected Plaintiff's need to elevate her legs every *hour* and failed to explicitly address her contention that she needed to elevate her legs every *two hours*.  To the contrary, the record indicates that the ALJ considered Plaintiff's reported limitations and found that *no* purported leg elevation requirement restricted her RFC given effective treatment for the swelling in Plaintiff's legs, a lack of ongoing intervention, a discontinuation of impairing symptoms, and significant daily activities.

Substantial evidence supports the ALJ's consideration and skepticism of Plaintiff's reported limitations.  The ALJ considered Plaintiff's testimony about needing to elevate her legs, writing that Plaintiff reported that her "feet and legs swell which make it difficult to walk or bend her legs. She said she elevated her legs about 15 to 20 minutes every couple of hours." Tr. 28.  In a subsequent paragraph specifically addressing the swelling in her legs, quoted in full above, the ALJ noted specific inconsistencies between Plaintiff's testimony and the medical records.  The ALJ observed that contrary to

11

Plaintiff's allegations regarding the extent of her purported condition, medical records indicated that Plaintiff's "lymphedema with associated swelling of the legs has been adequately treated, has not been continuous, and does not require elevation of the legs every hour." Tr. 29. In support of this finding, the ALJ noted that Plaintiff "was given wrap therapy during the summer of 2021, which helped 'tremendously.'" Tr. 29 (quoting Tr. 604). Further, medical records in 2022 specifically noted the absence of edema or swelling in Plaintiff's lower extremities upon physical examination. Tr. 492, 501, 513. As Defendant points out, "[i]f an impairment can be controlled by treatment or medication, it cannot be considered disabling." *Hensley*, 829 F.3d at 933-34 (quotations omitted).

In support of his conclusion that Plaintiff had been adequately treated, the ALJ also relied on the relative lack of treatment reflected in records after 2021. While Plaintiff concedes the absence of additional treatments for lower leg swelling after 2021, she argues that this fact cannot support a conclusion that she lacked an ongoing limitation. Plaintiff points to the variation in her symptoms despite ongoing treatment, highlighting occasions in 2020 and 2021 on which her providers noted worsening or ongoing fluid retention and edema in her lower legs despite numerous interventions to treat the swelling. She quotes from one progress note from an office visit on September 10, 2021 during which Plaintiff shared with her provider that she "was told by cardiology and the lymphedema clinic that there is not much else they can do for her." Tr. 582. Plaintiff argues that "[t]he medical evidence of record, therefore, is more consistent with an understanding that limited treatment after 2021 was the result of no other remaining

12

treatment options" and not "meaningful improvement." ECF No. 10-1 at p. 8. However, the record does not contain any indication, besides her own *ispe dixit*, that Plaintiff was out of treatment options. As Defendant observes, the record is devoid of any record in which a medical provider themselves concluded that there were no additional treatment options available to Plaintiff. Even assuming arguendo that the record supported Plaintiff's proposed interpretation, it is still inapposite under the standard applicable here. The province of the Court is not to determine which of two hypothetical explanations for a lack of continued treatment is more plausible. That is the ALJ's job. "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, the court must affirm the [ALJ's] decision." *Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021) (quoting *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012)) (alterations in original). Because the ALJ's conclusion that Plaintiff's lower extremity swelling was treated and not ongoing is generally consistent with the record, the Court will not disturb this finding.

Plaintiff also contends that the ALJ erred by not considering the fact that any symptom improvement or lack of further treatment could have been related to her avoidance of the physical activities the ALJ included in her RFC and her compliance with treatment at the time. In support of this argument, Plaintiff cites Social Security Ruling 16-3p, 2017 WL 5180304, which noted that consideration may be given to whether a temporary abatement of symptoms could have been due to the claimant structuring their daily activities to minimize their symptoms. However, as Defendant points out, Plaintiff cites no actual evidence that she was required to avoid the activities the ALJ included in

13

her light work RFC in order to prevent her lower leg swelling from returning or worsening.  She merely offers another alternative explanation, which is for the ALJ to weigh.  Though the ALJ did not explicitly delineate in his decision all of the possible reasons why Plaintiff's lymphedema treatment did not persist after 2021, the Court finds that there is substantial evidence in the record to support the ALJ's conclusion that Plaintiff's disabling limitation was not ongoing.  *See*, *e.g.*, Tr. 492 (as of August 6, 2022, "no edema" in extremities noted on physical examination), 501 (as of July 14, 2022, "no edema in the lower extremities"), 513 (as of June 7, 2022, "no edema in the lower extremities").

The ALJ's conclusion that Plaintiff did not remain significantly limited by the swelling in her lower legs is further bolstered by prior administrative medical findings based on a review of the medial records, which found the same RFC concluded by the ALJ, with no severe impairment requiring periodic elevation of Plaintiff's legs.  In a Disability Determination Explanation dated November 29, 2022, it was noted that despite Plaintiff's subjective report that she "need sto [sic] keep legs and feet elevated," no significant functional limitation was actually warranted related to this contention.  Tr. 181.  Similarly, a second Disability Determination Explanation dated May 22, 2023 also excluded any requirement to periodically elevate Plaintiff's feet though her subjective report that she "[h]as lymphedema, needs to keep legs and feet elevated" was considered.  Tr. 189.

The ALJ also noted that Plaintiff's daily activities were not significantly limited.  As required by the Commissioner's rules, the ALJ gave due consideration to Plaintiff's

14

daily activities in evaluating the potential limiting effects of her reported symptoms.  20 C.F.R. § 404.1529(c)(3)(i).  The parties do not contest that Plaintiff lived alone and performed a range of recreational and household activities that included cooking, cleaning, laundry, driving, getting groceries and the mail, visiting family, and attending weekly church services.  Plaintiff correctly notes that an RFC cannot be based only on her ability to do chores, hobbies, or activities that can be done at her own pace, which are not necessarily comparable to gainful work.  *See Singh v. Apfel*, 222 F.3d 448, 452-53 (8th Cir. 2000).  However, daily activities are *one factor* an ALJ may consider when weighing the claimant's credibility to determine if their reported symptoms are consistent with the record as a whole.  20 C.F.R. § 416.929.  And indeed, Plaintiff's daily activities were one factor the ALJ considered in addition to the other evidence described above.  Plaintiff asserts that an adequate consideration of the frequency, quality, independence, and sustainability of her daily activities would reveal that they are inconsistent with the RFC the ALJ determined.  However, the ALJ's description of her daily activities clearly indicates a higher level of nuance than Plaintiff acknowledges.  *See* Tr. 30 (noting consideration for the distance Plaintiff traveled when visiting her sister, reported difficulties with vacuuming, and difficulty picking up more than a few items while grocery shopping, indicating a more detailed analysis of the contours of each daily activity than Plaintiff contends).  The Court finds that the ALJ's consideration of Plaintiff's daily activities was sufficient and consistent with his conclusions.

On balance, the Court finds that the ALJ's consideration of Plaintiff's reported symptoms, limitations, and daily activities was adequate, and the ALJ's conclusions as to

15

her RFC and disability status are supported by substantial evidence.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is

**AFFIRMED**.  A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 6th day of January, 2026.